## CECILIA M. J. WILLIAMSON v. A. C. & E. D. DOWNS.

1. HUSBAND AND WIFE: RIGHT OF WIFE TO ANTICIPATE SURPLUS OF HER MORT-GAGED PROPERTY.—If, in a mortgage deed executed by a *feme covert*, to secure a debt then past due, it be stipulated, "that any surplus remaining, on a sale of the property, should be paid to her, or her order," she may anticipate the surplus before a sale; and hence, any sums paid by the mortgagee to her, or upon her order, after the date of the mortgage, and before a sale, or final set-tlement of the accounts of the mortgagee, should be charged to her, in an account ordered upon a bill filed by her to redeem the mortgaged property.

2. CHANCERY: PRACTICE:—EXCEPTIONS TO ACCOUNTS: HIGH COURT.—If the decree be correct, as to the principles upon which an account is ordered to be stated, objections to. the account will not be noticed in this court, unless exceptions were filed in the court below.

3. MORTGAGE: CHANCERY: PRACTICE IN STATUTORY ACCOUNTS.—Where a mort-gage is made, to secure an unfixed and unsettled indebtedness from the mort-gagor to the mortgagee, it is proper, on a bill by the former to redeem, to examine all the matters of dealing between the parties previous to the mort-gage, except such transactions as it shall appear have been settled.

4. CHANCERY: PLEADING: EVIDENCE.—An admission, by the defendant, of an item of indebtedness against him, contained in an account filed as an exhibit to his answer, is sufficient evidence to prove it; and such item should be allowed in an account stated, under the order of the court, between the parties, unless it be otherwise shown to be an improper charge.

APPEAL from the Chancery Court of Warren county. Hon. J. S. Yerger, judge.

In addition to the facts stated in the opinion of the court, it is only necessary to set out the written agreement, signed by E. D. Downs, on the 28th October, 1851, being the same day on which the deed was executed by Williamson and wife to A. C. & E. D. Downs. That instrument is in the following words: "Whereas, John B. William-son and Cecilia, his wife, have, by deed, bearing date herewith, conveyed to us, Alfred C. Downs and Erasmus D. Downs, certain land and negroes, in said deed- particularly set forth and described; which said deed is for the payment of debts now due and owing by said Cecilia Williamson, due to us and assumed by us. Now, we hereby agree upon the sale of the said property so conveyed, and

Williamson *v.* Downs.

the payment of the debts so due and assumed, to pay to the said Cecilia Williamson, or to her order, the sum or sums of money that may remain in our hands, after fully paying and satisfying the said debts.

" In testimony whereof, we have hereunto set our hands, this 28th October, A.D. 1851.

Signed,                         " E. D. DOWNS."

*Marshall* and *Miller*, for appellant,

Made the following points :—

1. The appellant was wrongfully charged with money loaned and paid after the date of the mortgage. She held her property under the Act of 1839, and could only incumber it in the mode therein prescribed. See *Davis* v. *Foy*, 7 S. & M. 64; *Frost* v. *Doyle*, Ib. 68; *Berry* v. *Bland*, Ib. 77; *Robertson* v. *Bruner*, 2 Cushm. 242; *Waul* v. *Kirkman*, 3 Ib. 609; *Seeth* v. *Rowland*, 1 Ib. 264.

2. The court below erroneously struck out items in the commissioner's account, in favor of appellant, and against E. D. Downs, amounting altogether to $2223 10. These items were distinctly admitted, by the answer of Downs, to be correct, and they cannot now be rejected.

3. It was error to charge appellant for the rent of the land for the year 1854.

*F. Anderson*, for appellees,

Insisted that, as the appellant had moved to confirm the commissioners' report, she could not now object to any item therein allowed against her : *Nibbitt* v. *Cunningham*, 27 Miss. R. 292; and 2d. That the only evidence of the justice of the items rejected by this court was the account of E. D. Downs, attached to his answer; and that this account showed clearly that these items were applied to the debts due by Mrs. Williamson anterior to the execution of the mortgage; and that it is well settled, that when a book or paper is produced, for the purpose of charging a party, it may also be used by way of discharge. Greenl. Ev., §§ 151, 152, 153, 290, 370, 371.

HANDY, J., delivered the opinion of the court.

The appellant filed this bill in the Chancery Court of Warren

county, for the purpose of having a deed—absolute on its face, exe-cuted by her and her husband then living, and conveying certain lands and slaves, her separate property, to the appellees—declared a mortgage, and for an account of the indebtedness to the appellees for which the property was bound by the conveyance.

The bill alleges that, although the deed was an absolute convey-ance on its face, and purported to be made in consideration of the sum of three thousand dollars paid, yet it was understood and in-tended to be merely a mortgage, to secure debts due by the appellant to the appellees at the date of it, and debts then assumed by them for her,—the sum received by her and due them on that account being $1500, and the whole liability assumed for her being $480 77,—and that by an instrument of writing executed by, or on behalf of, the appellees at the same time that the deed was executed, it is stated that the deed is intended to embrace debts then due by the appellant to the appellees, or assumed by them for her; that the appellees have sold one of the slaves to a third person, who purchased without notice, and that two other of the slaves are held by the appellee, A. C. Downs, who claims them as his absolute property, and refuses to give them up; and that the appellees seek and claim to charge her with various sums of money paid for her and charged against her, for which she is not bound, and which are not embraced in the agreement upon which the deed was made, and that she has been unable to obtain a statement of her account with them.

The answers of the appellees deny that the deed was intended as a mortgage, and insist that they acquired a good title by the deed. A. C. Downs claims that the appellant is indebted to him for money loaned and taxes paid upon the land, in a balance of about $420, over and above what he paid as the consideration for the deed, and is willing to reconvey the land to her, upon the pay-ment of that balance. E. D. Downs states, in his answer, that the greater part of the consideration, stated in the deed, was paid by A. C. Downs, at the time of its execution, and the balance was soon after paid in accounts between himself and the appellant, and refers to an account made a part of his answer, which he states shows fully all his dealings in relation to the matter. These deal-ings commenced more than a year previous to the date of the deed,

showing various matters of debit and credit connected with the business, and extending down to April, 1855, at which time it is alleged and stated by the accounts filed with the answer, that the appellant was indebted to him $165 67.

Both of the answers aver that the deed was intended to vest the absolute title to the property in the appellees, with full power to sell and dispose of it.

Upon the pleadings and proofs, an interlocutory decree was rendered at December term, 1856, declaring the deed to be a mortgage, and the sale of the two slaves by E. D. Downs to A. C. Downs to be void; ordering an account to be taken, charging the appellant with all debts due to either of the appellees, and with all debts assumed by them for her, and with all moneys paid by either of them to her or to her order either before the execution of the deed, at the time, or since its execution, and interest, &c., and crediting her with the price for which any of the property had been sold and the proceeds of the sales received by either or both of the appellees, with interest, &c., except the two slaves held by A. C. Downs, and with the hire of the slaves and rent of the land received by them since the death of the appellant's husband, in March, 1855, with interest, &c.

In June, 1857, the commissioner made his report, showing that the appellant was indebted to E. D. Downs $357 34, and that A. C. Downs was indebted to her $14 82.

To this account A. C. Downs filed exceptions, which, upon argument, were disallowed by the court. E. D. Downs also filed exceptions, on the ground that he was charged in the account with sundry items which were not proper in taking the account, and were not sustained by evidence. The exception in this respect was sustained, and the sum of $2223 10, allowed by the commissioner, was deducted from the account, and it was confirmed in all other respects, and a decree rendered for E. D. Downs for $2564 62, which was charged on the property mentioned in the conveyance.

The appellant took no exception to the commissioner's account, but, on the contrary, moved the court to confirm it.

Upon the rendering of the final decree this appeal was taken.

The first ground of error insisted upon, applies to so much of the interlocutory decree as directs that the appellant should be charged

in the account with *all money paid to her or to her order* by the de-
fendants *since the execution of the deed.*   This is contended to be
unwarranted by the agreement made at the time in behalf of the
appellees, which states that the deed was made "for the payment
of debts *now* (*then*) due and owing by the appellant to the appel-
lees, and assumed by them;" and as the deed was held to be a
mortgage, it is contended that it could not stand as a security for
moneys paid to or on account of the appellant's order since the
date of the deed.   But we do not consider this a just view of the
true character of the transaction.

The agreement executed in behalf of the appellees, after refer-
ring to the debts and liabilities which were intended to be paid
by means of the property conveyed, stipulates that, upon the sale
of the property and the payment of the debts so due to and as-
sumed by the appellees, they should pay *to the appellant or to her
order* the money remaining in their hands after paying said debts.
The power to sell is thus plainly recognized, and the proceeds were
to be applied, first, to the payment of the debts and liabilities re-
ferred to, and the balance paid to the appellant or to her order.
If the entire property had been sold by the appellees, there could
be no doubt but that, in accounting to the appellant, the appellees
would have received credit for any moneys paid to her or to her
order; for that was the positive agreement as to the payment of
the surplus remaining after paying the debts and liabilities secured.
But it appears that only one of the slaves conveyed was sold, the
sale of the two others to A. C. Downs by E. D. Downs having been
held to be invalid.   And it appears that the property conveyed
was more than sufficient to pay the debts and liabilities intended to
be secured, and that the greater part of it remained in the hands
of the appellees unsold.   If, before the sale, the appellant received
money from the appellees, or drew orders upon them which they
paid, must not such sums of money be considered as having been
received and paid with reference to the provisions of the agreement
between the parties, and the mortgaged property be charged with
them in a settlement of accounts between the parties, as much as if
the property had all been sold, leaving a surplus to be accounted
for by the appellees ?   This appears clearly to be within the true
spirit of the agreement.   By its terms, the appellees were *to pay*

*to the appellant or her order* the surplus, after sale, remaining over the payment of the debts provided for. The property being more than sufficient to pay these debts, the appellant had the right to anticipate the surplus before a sale of the property should be made, and to receive money or draw orders with reference to it, to be taken into account when a settlement of the whole business should be made between the parties. But if, in consequence of the failure of the appellees to sell the property, the appellant had to file her bill to redeem, or for an account, that certainly could not debar the appellees of their right to charge her in the account, with moneys paid by them to her or upon her order ; for, by the terms of the agreement, the surplus was to be paid in that manner, and it was immaterial whether that surplus was ascertained by a sale made by the appellees or the property was sold by decree in chancery. Moneys paid upon the transaction to her or her order were equally beneficial to her, and equally within the scope and spirit of the agreement, and were properly chargeable upon the mortgaged property.

The decree, therefore, is unobjectionable in this respect. If there was error in the account, in allowing items of payment, not within the rule stated in the decree, that should have been made the ground of exception to the account. Without such exception, the alleged errors in the account cannot be noticed, there being no error, in the principle on which the account was to be stated as settled in the decree.

The next ground of error insisted upon is, that the appellant is charged in the account with the rent of land (part of the property conveyed), for the year 1854 ; the amount of the rent having been received by her. This, like the objection last noticed, is matter of error in the account ; and no exception having been taken on that ground to the account, but the appellant having moved to confirm the report and account, the error in the account cannot now be noticed as ground of reversal.

The next error assigned is, that the court sustained the exception of E. D. Downs, and deducted from the account various items of credit allowed by the commissioners to the appellant, amounting to the sum of $2223 10.

It appears that these items are stated in the account filed with

the answer of E. D. Downs, as proper credits to the appellants; and they were accordingly allowed by the commissioner. Upon what ground they were stricken from the account, does not appear from the record. The admission of their correctness in the appellee's account, is certainly sufficient evidence to justify their allowance against him, unless it otherwise appears that they were not properly chargeable against him.

It is suggested, in support of the order allowing this exception, that the items embraced in it were not connected with the mortgage, but were antecedent transactions, which had been settled between the parties before the date of the mortgage.

But it appears that the dealings between the parties remained unsettled at the date of the mortgage; and, in the agreement entered into at the time, no amount of indebtedness is stated. For aught that appears, the previous transactions between them remained unsettled, and the amount of indebtedness was unfixed, and subject to future settlement. This idea is clearly held by the answer of E. D. Downs; for, in showing the state of the account embraced in the matter of the mortgage, he goes back to the year 1850, and states an account of his dealings with the appellant from that time until the close of his account in April, 1855. The whole account is stated as a continued and connected transaction, and, in order to ascertain the true amount of indebtedness by the appellant to him, it was necessary to examine all the items of debit and credit on both sides, from the origin to the conclusion of the dealings between them. It is immaterial whether the matters of account between the parties, previous to the date of the mortgage, were connected with the mortgaged property or not. The mortgage was given, in part, to secure debts due E. D. Downs, which were not then fixed and stated; and, it was clearly proper to examine all the matters of dealing between the two parties, in order to ascertain the state of accounts between them, unless all transactions, prior to the mortgage, had been settled between them, of which there is no proof. The propriety of this course is admitted by the answer of E. D. Downs, and his account filed therewith, and it appears to be manifestly just.

By that account, he claims that the appellant was indebted to him on account of the dealings between them, prior to the date of

the mortgage and up to April, 1855, the sum of $165 67. Yet, upon his exception, credits to the appellant stated in his account to the amount of $2223 10 are stricken out, either because they were not proved, or were not connected with the mortgage, or had been settled.

His own admission in his account is sufficient proof to establish them, and there is no sufficient proof that they had been settled. And it appears to be clear that these credits to the appellant were properly allowed her in the commissioner's report, and that the exception taken to them should not have been sustained.

For this error in sustaining the exception of E. D. Downs, the decree is reversed, the exception overruled, and the commissioner's report confirmed, and a decree ordered accordingly.